Case No. 4, 17-03-34, Board of Trustees of Community College Dist 505, 1st Award, Good Convocation. Counsel, you may proceed. My name is John Stramanis. I represent the appellant, Parkland College, in this case. It is my position that the lower court applied the incorrect legal standard, and as a result, the claim should be reviewed de novo, and the facts support the conclusion that the petitioner used an unintended path. In this case, the petitioner was a teacher at a community college. She taught vet. She was a veterinarian. She left on a Friday night to go to her car. She parked in a public parking lot. She left out of a public door. She walked down the stairs that were intended for both the public, teachers, and students. The stairs were maintained and salted. It was January. The petitioner testified that there was snow on the ground. She thought there was snow on the ground. En route to her parking lot, she stepped over a concrete parking barrier, the kind that cars pull up to, hit some ice, and fell. The underlying facts of the case are undisputed. The location of the fall is undisputed. However, the lower court applied the parking lot exception, and although she fell in a parking lot, this is not a parking lot case. She did not park in the parking lot where she fell. The parking lot where she fell was restricted to police officers and maintenance workers. While the parking lot itself was maintained by Parkland, in fact they maintained sidewalks and all the other parking lots, this particular location had a pathway that was salted and used as the intended pathway. The question as to whether it was an intended pathway or not was not addressed by any of the lower courts. They simply applied the parking lot exception because she fell in a parking lot. However, all the cases, every single parking lot case, involves a parking lot where the claimant fell. Here, Parkland College is a series of buildings, and there are some maps in the record. It's one of these places that expanded over time, but around the cluster of buildings are the main parking lots. Within the cluster of buildings is where the maintenance and police parked, and that's where she fell. She was en route to her parking lot, which was not even visible from where she fell. So it's our contention that this is more of a coming and going to work claim, and the issue is whether it was an intended pathway or not. It's not simply a parking lot exception case. That's what the commission decided the facts on. They examined the parking lot exception and found that because there was ice, it arose out of the court's employment. However, she was cutting through the parking lot at night when nearby, just on the other side of the transformer, and there's pictures in the record that shows where the transformer is, there is an intended pathway. That was the pathway that was maintained and salted because it's winter. That was the pathway she should have used instead of cutting through this shortcut. Because it was personal risk and a shortcut, it should have been found not in the course of her employment. However, I know counsel will argue that it's a manifest weight case, and I think the circuit court got into this issue, the circuit court did get into the issue whether it was manifest weight or de novo. They found it was a manifest weight case because the question of whether it was in the course of is always a fact question. However, when making that decision, they again applied the parking lot exception. The commission did not consider or make any findings as to whether it was an intended path or not. The standard of manifest weight can't be applied to claims or issues that were not even decided by the lower court. There's nothing that says whether or not it was an intended pathway. There's evidence in the record that Parkland knew that it was commonly used by students and faculty. That's correct. That particular door. She left that door. She said the route across that lot was commonly used by students and faculty. The route she chose was cutting through. Yeah. But the industrial commission did not address that issue. They made no findings. There's evidence of it. And if there's evidence in the record that supports a commission's decision, then we can affirm it whether they rely on it or not. I don't understand your argument about the parking lot rule. I don't understand your argument on the standard of review. Well, the evidence that they looked at was in the context of a parking lot exception. They didn't look at the other theory of the case, the correct theory of the case. Again, all the parking lot cases involved a claimant parking in that parking lot, not that it was part of a path for us. I think she testified Parkland never restricted her from the route she followed on the day of her injury, and that the route was frequently used by faculty and students. Other people entered the reserved lot by crossing the same parking lot where she fell, I think was her testimony. That may be, but the court still applied the parking lot exception. And that's the legal basis for the factual finding. They didn't consider whether it was an intended pathway or not. If the court feels that this is a fact question, I think the reviewers did know both in the record supports it was an unintended pathway. But the court believes that it was, if there is a fact question, then the correct decision is to remand it to the industrial commission to determine whether it was an intended pathway or not. Similar to the Dyckman case that recently came out as a Rule 23, the court found that the circuit court improperly decided a factual issue and they remanded it. Here, because the correct legal standard was applied, that being the parking lot exception, the coming from or going to line of cases wasn't even considered. So the issue, the question as to whether it's against the manifest weight or not, whether the lower court's decision is against the manifest weight or not, I don't know how it can even be addressed when that issue wasn't even mentioned by any of the lower court's findings. Here, simply the wrong law was applied. As the industrial commission correctly points out, coming from, going to work are generally not compensable unless there's a parking lot exception. And here, the route the petitioner chose to take, but she didn't park in that parking lot. The restricted parking lot wasn't for her. She couldn't park there the night of the accident. So it doesn't line up with any of the parking lot exception cases. It was simply, in our view, an unintended path she cut through. It wasn't a sidewalk. I know in the claimant's brief, they argue, well, this is a sidewalk because petitioner mentioned it being a sidewalk, but common sense says sidewalks don't have parking barriers across them. In this case, she stepped over this barrier when a maintained path was nearby that was the safe path. Had she stepped a few feet over and used the maintained path, she wouldn't have slipped on this ice. So I think at the very least, the court should remand this case for further consideration on the factual issue as to whether it was a maintained path or not, because nobody's ever addressed that. No lower court has looked at that, and the reason why that needs to be examined is because the petitioner didn't park where she felt. Parking lot exceptions are intended for where the petitioner parked, not where this person was walking to or from. And the record also supports that it was an unintended pathway, but again, I understand that the court does not want to address that issue because the finder of facts should be the industrial commission. So if reversal and finding no compensability is in order, if that's not part of the court's decision, then I think the remand is the necessary thing, consistent with the recent indictment of the non-fell court decision. Thank you. Thank you, counsel. We have time in the report. Thank you. Counsel may respond. Your honors, may it please the court. My name is Daniel Jones, and I represent the defendant's appellee, Lisa Eller, in this case. Your honors, the determination of whether a claimant's injuries arise out of and are in the course of their employment. It's manifest way. We know it's manifest way. Don't waste your time on it. Okay. Thank you very much. Well, and when we look at this case, then, your honor is correct. You can apply, this court may apply any facts that are in the record that support the finding of the industrial commission. And in this case, not only did Lisa Eller testify that faculty and staff and students all used this parking lot, or this pathway, which is a sidewalk. If you look at it, it's a sidewalk. But the other person that testified to that was the respondent's own supervisor of maintenance. And he also testified that it's used by employees all the time. And what the employer doesn't want you to consider is that this is a parking lot that she not only gets to park in some of the time, but she has to park in some of the time. She gets to park in the parking lot when she is just there for a brief period of time to drop off materials or things like that. But she also needs to park there on weekends because she is a doctor of veterinary medicine. There are animals that live in the veterinary part of that clinic or of the school. And to get to them on the weekends when it's her turn, she has to go and go through this parking lot and its surrounding pathways to get into the building through the security doors. Because there's only one set of security doors that can get into that wing. So she is an intended user of this parking lot at times. And so I would disagree with the counsel that is the guy. It's intended or permitted because there's nothing to suggest that she can't park in her regular parking lot, the other parking lot, any time she's coming on campus. She could. And there is a sidewalk, right, that's maintained to that parking lot where she obviously, I've never been on campus yet that didn't have stickers all out the vaseau about whether you could park or couldn't park. And they're all confusing. So she probably has a restricted parking lot with a sticker that she used to use. I don't know about the stickers. I don't know about that part of it. Otherwise, campus police would know who's parking there. Yeah, there are parking lots that surround the buildings and the buildings are all strangely designed. And she and the students and anybody else are allowed to park out there all the time. This particular parking lot, though, has parking for other people. Now, there are five signs in the parking lot and three of them say, no parking, security personnel only. And that's for the police vehicles. But there are two other parking lots that say, for official use, only two-hour parking. And that's where she gets to park when she is either dropping stuff off during the weekday and when she's there on the weekend. Now, again, she has to go in through the security doors and can only get there through that parking lot. So even if she's there on a Saturday and she parked out at M6, one of those outlying parking lots where she parked, she would still have to take this path that she took in reverse and go through this parking lot and go through. So you're telling me the parking lot is the sidewalk to the place she normally parks? And the surrounding pathway. It's not – it is – I think she's an intended user of that parking lot. If she's allowed to park there, it is. So had you diverted that parking lot she was walking – was she walking through a parking lot when she fell? She had come – she went out the doors, went down the steps, took a right turn onto this sidewalk, and then came to the parking lot and was stepping out into the parking lot over this concrete barrier that Parkland had placed right there in the sidewalk. So the sidewalk went – the sidewalk didn't lead to, did it, the parking lot? Yes, it did. Okay. And it just ends there? Well, it ends in the parking lot, and then the parking lot leads to the next set of sidewalks on the other side. So, you know, visualizing this as your description would suggest, is that the sidewalk ends at the edge of a parking lot? Correct. It doesn't go to the left or the right? There is more sidewalk to the left. There is a transformer there that's surrounded by a fence, and there's more sidewalk there. Well, there is actually a continuation of the sidewalk that doesn't go through the parking lot. Yeah, and it loops around that – So basically, you just – I don't want to go to the left because it's a further route for me to take to where my car is. Instead, I'm just going to go and step over a barrier onto a parking lot, and that's where the accident occurred. Correct. Okay. And it's most clearly seen, if you look in the record, at C-161, it's the District Exhibit 18. It's a picture of the – Well, I've got it in my mind. Right. Okay. So the bottom line is, so this is not – so why is it called a pathway and not a parking lot? Well, because everyone uses it as such. There is no signs anywhere that says no pedestrian traffic. It doesn't say maintenance personnel only. It's a sidewalk, and that's what they use it for. That's what Dr. Eller testified to. That's what their, you know, head of – supervisor of maintenance – How many sidewalks have concrete barriers crossing them? Well, and – but I think Parkland's on the hook for that. They've placed a sidewalk that they've permitted people to use, and then they've put a barrier across it. I think that's another reason to affirm the Commission's decision, is that they have created this hazardous condition in a parking lot, in a parking lot pathway, that they know about. And it's certainly different than the cases that they've cited in their brief as saying, you know, this is a deviated pathway. I mean, if you read those cases, Worden and Hatfill and Dotson, first of all, the two that are appellate decisions, Worden's a Commission decision, but again, manifest way standard used even in their two appellate cases, but they leave a designated walkway. In Worden, the claimant left a parking lot that had gravel on it and could have walked up a gentle slope into a paved parking lot and then went into the construction area. He chose to scramble up a 45-degree slope of dirt that was covered with gravel and debris, clearly deviating from the pathway. Hatfill is the same way. There's a ditch with water running through it, through the parking lot. And there's a 50 feet either side of him. There's a pathway that he could walk up to the next level or a roadway 50 feet to the south. And the roadway is important there. But he chose to jump over this ditch, and that's when he was hurt. And that's when it's found that he left the course and scope of his employment, is when he chose to ignore an available walkway to jump the ditch. Same thing in Dotson. She left a pathway, a paved pathway, because she was taking a shortcut over a grassy slope that had been having rain and water. It's icy and watery. She left that safe pathway to go over an icy, grassy slope and fell. These are conditions that are different than leaving a paved walkway. And it's also important to know what's in these two cases, their cases. If you read Hatfill, the court says- She left directly to where her car was. Correct. Yes. But she wasn't going through the parking lot and stepping over a concrete barrier. It was paved every step of the way the way she went. And their Dotson case tells us you don't have to take a designated walkway. You are free to choose what would normally be a safe route. And if you walk over a paved walkway they provide that doesn't have ice or other hazardous conditions, such as a parking barrier on it, it would be normally safe. So the arbitrator finds this was a safe route? I would think it's in there, but I can't swear that as I say about what's all in the court. But you think they have to, wouldn't they? I think that's implied in that. And I think there's enough basis for you to affirm on that decision as well. And Hatfill's also important because the ruling is could have taken the designated walkway 50 feet to the north or could have gone to the south and taken a roadway, not a designated sidewalk, but a roadway. And that should have been a normally safe path. And he could have taken either one of those, the court tells us, and he could have been in the course and rising out of his employment. But he chose to jump the ditch. And so there's not a requirement under Illinois law that you go on some sort of specific designated pathway. And you are not required to take just one pathway. You are allowed to take what would normally be a safe route. Some people say jumping the ditch is somewhat analogous to stepping over a concrete barrier. How do you answer that? Well, again, I don't think it's the same thing, but taking one step, just making sure you go over a barrier, I don't think it's the same thing as jumping over a five-foot ditch with water in it. What role did the concrete barrier play in her injury? I don't think it played any. How far away was she from the concrete barrier when she fell? She was stepping over it. It was literally right in front of her when she fell. She was stepping into the parking lot. And I think she would have slipped on this, what has been called black ice, no matter if that parking barrier were there or not. It just happened to be there. And, again, that was placed there by parkland. And how tall? How many inches? It's your standard concrete parking barrier. Five or six inches tall. It's not a big erect barrier of any kind. It's a standard concrete thing you would see in any parking lot. Parking blocks are what I think of when you say a standard parking barrier. We're talking about standard parking block? Correct. Was it a continuous concrete core or a separate block, and then separated by a little space, and then another block separated by space? It was one complete. It was the second thing. It was one big concrete block, but it was not quite the width of a parking spot. And then there was another one. So it was the ones that we see with rebar holding them in place? Yes, but there wasn't a rebar in this particular case. It has two holes in the top on either side that a piece of rebar can be drilled through. These have just been laid there. So they're movables. They are movables, yes. I just suggest one thing to both counsel. In a case like this, photographs or diagrams are very helpful. And since there are five judges, only one judge has the record in his possession. Having a photograph or a map in the brief would be very helpful here. I had trouble picturing in my mind's eye the layout of these two parking lots. How far away is the claimant's parking lot from the parking lot in which she was injured? I don't know if we've ever measured it. At least a quarter of a mile. Are they connected? They are by a roadway, yes. And all of the parking lots are connected by pathways at Parkland. And I apologize for not providing better pictures. When you say they're connected by pathways, the lot that she is attempting to access where she parked, there was a pathway to that? There is a pathway up until within a few feet of the small parking lot where she fell. And she has the choice. She can keep going on a sidewalk that leads into one entrance of the building, or she can walk down an access road into the small parking lot and into the sidewalk on which she fell and go in the building that way as well. So be real careful. You can't cite commission cases to us. They're not precedential. We won't take them into consideration. You shouldn't do it. Okay. And I was just pointing out that one of their cases that they've cited is one. I don't think I've cited one in my brief, but thank you for that. You did cite the same thing to oppose on the council. And thank you for telling us that. But the other thing I want to talk about briefly, is that when you talk about whether the injury arose out of the employment, there are actually two exceptions to the rule going to and from the place of businesses. And the first one is when an employee is present at the accident scene is required by the performance of her duties and the employee is exposed to a risk greater than that of the general public. And I think that exception applies in addition to the parking lot cases here as well. Again, any lot that she's required to use some of the time, permitted to on some of the time, she's got to use, she's got to be at Parkland College. She teaches there. She has got to be on the premises more than members of the general public. There are times that she can only access the building through the security entrance, which is off of that small parking lot. So she has to use that parking lot and its pathways. She uses this walkway and is exposed to risk much more than the general public. So I think the first exception is another reason to justify the commission's decision. In addition to the parking lot cases, I think the correct manifest weight of the evidence standard was applied by the circuit court here. It should be applied by this court, and the ruling should be affirmed. Thank you very much. I suppose the question I have for you is, in this case,  going through the restricted lot was frequently used by faculty and other students. They entered the reserve lot by crossing the same parking space on which she fell. And Burns testified that he was aware that faculty, staff, and students walked through the reserve lot, and then the lot was plowed and paved between the lot and the building, and it was solved. So I suppose the question that I have is if an employer acquiesces in the employee's use of a certain area as a means of ingress and egress from their building to their parking lot, are they then responsible for any condition that exists in this area where they've acquiesced the use? And I think they are, Your Honor, because they have provided this means of ingress and access. They haven't put up a sign that says no pedestrian traffic or maintenance goes that way. But they did provide a path by which she could have gone around the restricted area. She could have turned towards the transformer and followed that path and gotten to her lot without crossing the restricted lot. But that's not my question. I know that's a longer way, and that's clear. But if the employer acquiesces in the use of this route, do they then become responsible for any injury that may be caused because of a condition existing on that route? And I say I'm out of time. And I think they are, and I think the direction goes back to their Dotson case, which says the pedestrian is free to choose what would normally be any safe path to go to and from work to get to the parking lots. And I think once you acquiesce to that, you're aware of the situation. You're on notice, as their own personnel testified to. I think you're on notice to maintain all of those walkways in a position of safety for your employees. You don't get to choose, well, you know, if she'd fallen on a weekend or whatever, maybe she'd been covered in the course of her employment. But here they have acquiesced. They have maintained the parking lot. I believe there's sufficient basis to affirm the commission's decision. Thank you, Your Honor. That's because you're concluding this is a safe walkway. I think it is a safe walkway when it is properly maintained, yes. Thank you, Your Honor. Thank you, Counsel. Counsel, you may reply. Thank you. I think this point was brought out, but sidewalks do not have RPM barriers. The petitioner chose essentially a shortcut. The maintained pathway through the parking lot was adjacent to her. That's the maintained pathway with the salt. And that was the intended pathway, according to the testimony of Troy Burns. The petitioner herself... So with Dodson's case, the language opposing counsel gave us in that case, I assume that that definitely was language, is free to choose a safe path. Correct. So your argument would be that that was a choice that was an unsafe path. That's correct, because the safe path was nearby. And the characteristics of Dodson of an unsafe path, if I recall correctly, was a sloping, grassy type null thing. Correct. And inclement weather and slip as opposed to taking a maintained paved sidewalk. Correct. This was a dangerous path because it was winter and the maintained path was nearby. That's the path that had the salt. Is there any evidence in the record that would suggest an inference or a fact that the maintained pathway going around this transformer was maintained to a greater extent than the parking lot? Yes, there is. What would that be? Troy Burns testified that the parking lot was shut. Shut. He said that the pathway was shuttled and salted. Okay. And if the pathway was salted, that got rid of the ice. Petitioner, when she talked about public using the pathway, said the public used the doors. She didn't talk about the path that was chosen by the public. She said they used the doors. Also, the arbitrator asked a question about, again, trying to visualize this whole thing, and I really wish we did more with that. The arbitrator asked this question. So it would be correct that if that vehicle was not there, that's where she fell. There was a picture and it had a car where she fell. So it's definitely a parking lot. It's not a sidewalk. It's not a pathway. The pathway was adjacent to where she fell, and that's the place that was being used. Can I ask you about something you said? My notes indicate to me that Burns and the claimant both testified that the entire vicinity of the parking space where she fell was plowed, salted, and available for pedestrian use. Am I wrong? I think you'll see the distinction was the parking lot was plowed, the pathway was plowed and salted. So there's no evidence in this record that the parking space where she fell was both plowed, salted, plowed and salted? I believe that's correct. That was my reading of the evidence, yes. And, again, if the court feels like there's a fact question, the correct thing is a remand, but I think the record supports a DNOA review and a finding of an unintended pathway. Thank you. Thank you, Kathy. All three arguments in this matter this morning will be taken under advisement. This position will issue.